UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| OVELL T. BARBER, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:14cv00519 |
| | ) | |
| v. | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| CYNTHIA HALL, *et al.*, | ) | By:    Joel C. Hoppe |
|     Defendants. | ) | United States Magistrate Judge |

Ovell T. Barber, a state prisoner proceeding *pro se*, has filed suit under 42 U.S.C. § 1983 alleging that the five defendant prison officials violated his rights under the Eighth Amendment to the United States Constitution. ECF No. 1. Each defendant moved for summary judgment, ECF Nos. 37, 46, 49, and Barber timely responded, ECF Nos. 42, 54, 55. Barber also filed two Motions to Compel, ECF Nos. 57, 58, which the Court construes as motions to file supplemental pleadings alleging a new retaliation claim against two existing defendants. *See Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002) (citing Fed. R. Civ. P. 15(d)).

The motions are before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 61. Having considered the parties' pleadings, all supporting materials, and the applicable law, I respectfully recommend that the presiding District Judge grant each Defendant's motion for summary judgment on the merits and deny Barber's motions to supplement as futile.

I. Standards of Review

*A.    Summary Judgment*

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, --- U.S. ---, 134 S. Ct. 1861, 1866 (2014) (per curiam). Facts are material when they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*,

1

477 U.S. 242, 248 (1986). A genuine dispute exists if "a reasonable jury could return a verdict in favor of the nonmoving party." *Kolon Indus., Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 173 (4th Cir. 2014) (citing *Anderson*, 477 U.S. at 248).

"The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Appalachian Power Co. v. Arthur*, 39 F. Supp. 3d 790, 796 (W.D. Va. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party makes that showing, the nonmoving party must then produce sufficient admissible evidence to establish a specific material fact genuinely in dispute. *See* Fed. R. Civ. P. 56(c), (e); *Scott v. Harris*, 550 U.S. 372, 380 (2007). When deciding a summary judgment motion, the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the nonmoving party's favor given the record as a whole. *See Tolan*, 134 S. Ct. at 1866; *Scott*, 550 U.S. at 380. The court does not weigh evidence, consider credibility, or resolve disputed issues—it decides only whether the record reveals a genuine dispute over material facts. *Tolan*, 134 S. Ct. at 1866.

B.    *Motion to Supplement*

A supplemental pleading is one that "set[s] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Leave to supplement a complaint "should be freely granted[] and should be denied only where 'good reason exists,'" such as where the supplemental pleading does not state a claim against the named defendant. *Franks*, 313 F.3d at 198 n.15 (quoting *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001)) ("[T]he standards used . . . in ruling on a motion to amend or on a motion to supplement are nearly identical."); *Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Eng'rs*, 841 F. Supp. 2d 968, 979 (S.D. W. Va. 2012) ("[A] court may deny a motion to supplement or amend when the amendment would be futile."); *cf. Cominelli v. Rector & Visitors*

*of the Univ. of Va.*, 589 F. Supp. 2d 706, 712 (W.D. Va. 2008) ("An amendment may properly be found futile where, as a matter of law, it fails to state a claim.").

## II. Facts & Procedural History

When he filed this lawsuit, Barber was an inmate at River North Correctional Center ("RNCC") in Independence, Virginia.[1] Compl. ¶ 1. Barber was diagnosed with sleep apnea in April 2014 and uses a continuous positive airway pressure ("CPAP") machine when he sleeps at night. *Id.* ¶ 15. According to Barber, sleeping without the machine limits the oxygen flow to his brain, which could "easily" cause permanent brain damage or death. *Id.* ¶ 16. Barber experiences high blood pressure, severe chest pain and headaches, and anxiety attacks after sleeping without CPAP therapy. *Id.* Eric Potter, M.D., monitored Barber's sleep apnea and CPAP use while Barber was housed at RNCC. *See id.* ¶ 13. In April 2014, Dr. Potter permanently assigned Barber to a lower bunk to accommodate his use of the CPAP machine.

On August 1, 2014, Officer Charles Doss put a second inmate in Barber's double-occupancy cell, which required Barber to unplug his CPAP machine so the cellmate could move around during the day. *See id* ¶ 7. Four days later, Barber submitted a written request for a single-occupancy cell because his CPAP machine "requires space of its own" and his current cell was too small to accommodate two people "when one [person] needs a breathing machine to sustain his life." Compl. Ex. J, at 7, ECF No. 9. Warden Benjamin Wright responded that only RNCC's medical staff could decide whether an inmate's medical condition required a single-occupancy cell. *Id.* He forwarded Barber's request to Cynthia Hall, R.N. *See id.*

On August 14, 2014, Barber submitted a sick-call request asking to be evaluated for "medical single cell status" because he was concerned that his cellmate "might do something to

---

[1] Barber has since been transferred to Red Onion State Prison in Pound, Virginia. *See* First Mot. to Compel, Attach. 1, ECF No. 57-1.

his CPAP machine." Compl. ¶ 8. According to Barber, Rachel Wells, R.N., told him that "the physician ha[d] reviewed [his] chart and advised that single cell status was not indicated." *Id.* A few days later, Barber submitted an emergency grievance explaining that he must "unplug his CPAP machine during noon time [or] naptime" so that his cellmate could move around their cell. *Id.* ¶ 10. Barber recalls Nurse Wells explaining that neither sleep apnea nor CPAP therapy qualified for single-cell status and that "it would be OK if [Barber] did not use [the] machine during naptime." *Id.* On August 18, 2014, Barber submitted an informal complaint stating that he was "being denied adequate healthcare services" because he could not properly use his CPAP machine. Compl. Ex. J, at 6. On August 20, Nurse Hall told Barber "once again" that he did "not meet [the] criteria for single cell status at th[at] time per [VDOC] medical/nursing guidelines."[2] *Id.* She also noted that Barber's "healthcare needs [were] being met" because he had "been issued a CPAP machine." *Id.*

Dr. Potter discussed Barber's housing request with the nursing staff on two occasions in late summer 2014. Potter Aff. ¶ 23, ECF No. 47-1. The nursing staff explained to Dr. Potter (who is an independent contractor) that VDOC guidelines authorized single-cell status in three specific circumstances, but that they could override the policy "on a case-by-case basis with a physician's documented reason." *Id.* ¶ 24. According to Dr. Potter, Barber requires CPAP therapy only "during nighttime sleeping" because "his low oxygen levels occur only during [the] Rapid Eye Movement (REM) stage of sleep," which Barber will not achieve "unless he naps for

---

[2] The Virginia Department of Corrections' ("VDOC") Standard Treatment Guidelines define the three circumstances under which an inmate qualifies for single-cell status as a matter of policy: (1) patients less than one year post-transplant; (2) HIV-positive patients who are on dialysis; and (3) patients with lower-bowel disease "adjudge[d] offensive to others." Hall Aff. ¶ 13, ECF No. 50-1; Wells Aff. ¶ 13, ECF No. 50-2; VDOC Std. Treatment Guidelines (rev. May 2014), Ex. B ¶ IX(A)–(C), ECF No. 50-4.

4

over 60 minutes." *Id.* ¶ 25; *accord* Sleep Study Results, Apr. 15, 2014, at 46–47, ECF No. 50-3 ("Barber demonstrated frequent hypopneas on the overnight polysomnographic evaluation, only during REM sleep. . . . It is likely that this sleep apnea during REM sleep is responsible for the reported stopping breathing at night."). Dr. Potter "considered [Barber's] request" in light of his "knowledge of [Barber's] medical condition and determined that [a single-occupancy cell] was not medically necessary" because, in his medical judgment, nocturnal CPAP therapy "would effectively treat" Barber's sleep apnea. Potter Aff. ¶ 25.

On August 23, Barber submitted a regular grievance stating that he could not properly use his CPAP machine in his current cell. *See* Compl. Ex. J, at 4. He also said that he could "die or receive permanent brain damage" if he did not use the machine while "sleeping during naptime or nighttime." *Id.* Warden Wright responded that, per VDOC guidelines, neither sleep apnea nor CPAP therapy qualified Barber for single-cell status. *Id.* He also echoed Nurse Hall's sentiment that the fact Barber had a CPAP machine "proved" his needs were being met. *Id.*

In September 2014, Barber filed suit against Nurse Hall, Nurse Wells, Dr. Potter, Warden Wright, and Officer Doss alleging that they violated his Eighth Amendment right to be free from cruel and unusual punishment. *See* Compl. ¶¶ 2–8, 18. Specifically, Barber alleged that Doss put the second inmate in Barber's cell knowing that Barber would have to unplug his CPAP machine and that the other RNCC officials later refused to grant Barber single-cell status so that he could use his CPAP machine while sleeping. *See id.* ¶¶ 8–16. Barber seeks declaratory relief, punitive damages against each defendant, and an order directing the VDOC to assign Barber to single-cell status or, in the alternative, to transfer him to Dillwyn Correctional Center ("DCC"). *Id.* ¶ 18(A)–

(C). All five defendants moved for summary judgment on the merits of Barber's deliberate-indifference claim.[3]

In February 2015, Barber asked Wright and Doss to transfer him to DCC, presumably because he believed that facility houses "other [protective-custody] inmates [o]n single cell status with their CPAP/breathing machines," *id.* ¶ 18(B)(2). *See* First Mot. to Compel ¶ 1, ECF No. 57. Barber alleges that the officers lied about approving the DCC transfer and instead transferred him to Red Onion State Prison ("ROSP"), which is the highest security state prison in Virginia. *Id.* ¶¶ 3–4. According to Barber, his double-occupancy cell at ROSP—much like the one at RNCC—has only one electrical outlet and is designed in a way that requires Barber to unplug his CPAP machine so the cellmate can climb onto his top bunk. *Id.* ¶ 3. Being transferred to a "lock down prison" like ROSP also meant that Barber "los[t] a lot of privileges" that he had at RNCC, such as access to the law library and a typewriter. *Id.* ¶ 4.

Barber alleges that Doss and Wright sent him to ROSP as punishment for filing this lawsuit. *See* First Mot. to Compel ¶¶ 3–4; Second Mot. to Compel ¶¶ 1, 3. Barber seeks orders "compel[ling] the Defendants or their agents to transfer [him] to Dillwyn Correctional Center" and to assign him single-cell status so he can use his CPAP machine whenever he sleeps. First Mot. to Compel ¶ 4; Second Mot. to Compel ¶ 3. Barber also asks the Court to order the Defendants "to stop retaliating against [him] for" using his CPAP machine and for filing this lawsuit. First Mot. to Compel ¶ 4; Second Mot. to Compel ¶ 1.

---

[3] Hall, Wells, Wright, and Doss also asserted with little, if any, explanation that they are entitled to summary judgment on qualified-immunity grounds. *See* Wright & Doss Br. in Supp. 5–6, ECF No. 38; Hall & Wells Br. in Supp. 6, ECF No. 50.

6

III. Discussion

A.     *Deliberate Indifference*

"A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A deliberate-indifference claim has "two components, objective and subjective. Objectively, the inmate's medical condition must be 'serious'" in the sense that it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[4] *Id.* (internal quotation marks omitted). Subjectively, the prison official must have "actual . . . knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's [own] action or inaction." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The subjective component is an "exacting standard" that demands proof of intent beyond mere negligence, errors in judgment, inadvertent oversights, or disagreements about the prisoner's treatment plan. *Id.*

The mere fact that the Defendants knew about Barber's sleep apnea and CPAP therapy "is insufficient to support a finding of deliberate indifference" in this case because "there is no evidence that they believed [Barber] required a single cell" to use the machine as prescribed. *Germain v. Shearin*, 531 F. App'x 392, 396 (4th Cir. 2013). The Defendants produced evidence that a VDOC inmate is entitled to a single-occupancy cell only if he meets established medical criteria or "on a case-by-case basis with a physician's documented reason." Potter Aff. ¶ 24; *see*

---

[4] The Defendants do not contest that Barber's sleep apnea is a "serious" medical condition. Dr. Potter asserts that Barber's request for a single-occupancy cell is the sole "serious medical need" underlying his deliberate-indifference claim. *See* Potter Br. in Supp. 6, ECF No. 47. While Dr. Potter disputes Barber's alleged need for a single cell, which is a potential aspect of treating Barber's condition, Dr. Potter does not question the diagnosis of sleep apnea that he himself made.

7

*also* VDOC Std. Treatment Guidelines ¶ IX(A)–(C). Dr. Potter avers that he considered Barber's request in light of his personal knowledge of Barber's condition, including his sleep study results, and determined that he did not qualify for a single cell because he only needs to use his CPAP machine "during nighttime sleeping." Potter Aff. ¶¶ 24–25.

While Barber clearly disagrees with Dr. Potter's treatment plan, he has not produced any evidence that Dr. Potter "fail[ed] to provide the level of care that [he] himself believe[d was] necessary."[5] *Jackson*, 775 F.3d at 179. Barber also has not alleged that Nurses Hall or Wells deliberately interfered with any physician's evaluation of Barber's request for a housing accommodation. The nurses aver that they conveyed Barber's "concerns" to Dr. Potter and that they did not have independent authority to override the VDOC's cell-assignment policy. Hall Aff. ¶¶ 12, 14; Wells Aff. ¶¶ 12, 14. Their sworn statements also indicate that they agreed with Dr. Potter's opinion that Barber did not need CPAP therapy while napping and thus did not need to plug in the machine during the day.[6] *See, e.g.*, Hall Aff. ¶¶ 10–11; Wells Aff. ¶¶ 10–11.

---

[5] Barber responds that Lincare, his durable-medical-equipment supplier, instructed him to use the CPAP machine "nocturnally and during naps" because he could "go into REM sleep during naps, or whenever he sleeps." Pl. Br. in Opp. ¶ 5, ECF No. 55-1. Even if that is true, Barber does not allege that Dr. Potter actually knew about the supplier's instruction, or that Dr. Potter refused to accommodate Barber knowing that his cell assignment posed an excessive risk to Barber's health or safety. *See Jackson*, 775 F.3d at 178. "The mere existence of *some* alleged factual dispute between the parties will not defeat [Dr. Potter's] otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 744 U.S. at 247–48.

[6] Barber responds that the nurses did have such authority because they are nurse supervisors. Pl. Br. in Opp. ¶¶ 7–8, ECF No. 55-1. Whether or not they possessed the authority Barber claims, this dispute is not material because Nurses Hall and Wells agreed with Dr. Potter's assessment that Barber did not require a single-occupancy cell to use his CPAP machine as prescribed. *See Scott*, 550 U.S. at 380 ("[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." (internal alterations and quotation marks omitted)).

8

Barber's allegations show nothing more than a disagreement between a prisoner and his medical providers about the type of care he should receive. Such a disagreement falls short of showing that the medical defendants subjectively acted with a "sufficiently culpable state of mind" to violate the Eighth Amendment. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003); *see Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) ("Jackson's dispute with Defendants' decision not to authorize the particular treatment program he requested . . . amounts to a disagreement with his course of treatment that is not cognizable under the Eighth Amendment."). Accordingly, I find that no genuine dispute of material fact exists and Dr. Potter, Nurse Hall, and Nurse Wells are entitled to judgment as a matter of law.

As non-medical prison personnel, Warden Wright and Officer Doss were entitled to rely on the VDOC medical staff's determination that neither sleep apnea nor CPAP therapy qualified an inmate for single-cell status as a matter of policy. *See Reid v. Newton*, No. 3:13cv572, 2014 WL 1493569, at *14–15 (E.D. Va. Apr. 14, 2014) (citing *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990), *abrogated on other grounds by Farmer*, 511 U.S. 825 (1994)). While non-medical personnel can be held liable under 42 U.S.C. § 1983 if they "deliberately interfere[] with the medical staff's treatment," *id.*, Barber has not produced any evidence suggesting Wright or Doss did that in his case.

Barber alleges that the officers had reason to believe that he could not use his CPAP machine during the day and that they knew Barber thought he risked serious harm whenever he slept without the machine. *See* Compl. ¶¶ 7, 10; Compl. Ex. J, at 7. But Barber has not produced any evidence suggesting the officers actually knew that his housing arrangement posed an "excessive risk" to his health or safety. *See Jackson*, 775 F.3d at 178; *Germain*, 531 F. App'x at 396 (finding no deliberate indifference where evidence failed to show that prison officials

9

believed the prisoner required a single cell). On the contrary, Officer Doss avers that he gave Barber a small table for his CPAP machine, Doss Aff. ¶ 6, which allowed Barber to use the machine when he slept, *see* Pl. Br. in Opp. 9 ("[P]laintiff could not use his CPAP machine until he received the table from Doss.").[7] Warden Wright also promptly forwarded Barber's first written request to Nurse Hall so medical personnel could determine whether his sleep apnea might entitle him to an accommodation. *See* Compl. Ex. J, at 7. After that, the officers were "entitled to rely on the expertise and judgment of [the] medical personnel," *Reid*, 2014 WL 1493569, at *15, who determined that Barber's sleep apnea "was not severe enough to require assignment to a single cell," *Germain*, 531 F.3d at 396; *see Schultz v. Webb*, Civ. Action No. GLR-12-3613, 2013 WL 4501312, at *4 (D. Md. Aug. 21, 2013) (granting summary judgment to defendants who produced undisputed evidence that "Schultz was evaluated and it was determined that he had no medical need for a single cell"). This undisputed evidence entitles Warden Wright and Officer Doss to judgment as a matter of law.

B.      Retaliation

The Court construes Barber's motions to compel, ECF Nos. 57, 58, as motions to file supplemental pleadings alleging a new retaliation claim against Warden Wright and Officer Doss.[8] Although leave to supplement a complaint "should be freely granted," *Franks*, 313 F.3d

---

[7] Doss asserts that he does not make medical decisions, but instead relies on medical staff. Barber argues that Doss exercised medical judgment in providing a table on which Barber could place his CPAP machine and that this creates a genuine dispute over a material fact. Pl. Br. in Opp. 9–10, ECF No. 42; Pl. Second Br. in Opp. 3, ECF No. 53. I cannot agree. Providing a piece of furniture on which to place a medical device may have allowed Barber to use the device, but it did not involve assessing, diagnosing, or treating a medical condition—the quintessential functions in exercising medical judgment. The table also has little, if anything, to do with Barber's complaint that he needed a single-occupancy cell to accommodate his CPAP machine.

[8] The Defendants construe Barber's filings as motions for a preliminary injunction. *See* Wright & Doss Br. in Opp. 2, ECF No. 59; Potter Br in Opp. 2, ECF No. 60. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can

10

Case 7:14-cv-00519-MFU-JCH   Document 63   Filed 06/11/15   Page 10 of 13   Pageid#: 458

at 198 n.15, a court may deny leave when it would be futile because the supplement does not allege facts that state a claim for relief against the named defendant. *See Ohio Valley Envtl. Coal.*, 841 F. Supp. 2d at 979; *Cominelli*, 589 F. Supp. 2d at 712. Thus, Barber's proposed supplement must allege specific facts that, if accepted as true, "allow[] the court to draw [a] reasonable inference that" Wright or Doss are "liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Barber claims that Wright and Doss transferred him to ROSP and lied about approving his transfer to DCC as punishment for filing this lawsuit against them. *See* First Mot. to Compel ¶¶ 3–4; Second Mot. to Compel ¶¶ 1, 3. To state a claim for retaliation under 42 U.S.C. § 1983, Barber's proposed supplement must allege specific facts that, if accepted as true, support a reasonable inference that (1) being transferred to ROSP itself violated a constitutionally protected right, or (2) Wright and Doss transferred Barber to ROSP "in response to" Barber exercising his constitutional right to access the courts. *McFadden v. Lewis*, 517 F. App'x 149, 150 (4th Cir. 2013) (per curiam) ("Retaliation against an inmate for . . . exercis[ing] his right to access the courts states a cognizable claim" under 42 U.S.C. § 1983 "even if the [retaliatory] act would have been proper if taken for different reasons.") (citing *Hudspeth v. Figgins*, 584 F.2d 1345, 1347–48 (4th Cir. 1978); *ACLU v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993)).

Barber cannot show that the transfer itself violated a protected interest because "inmates have no independent constitutional right to be housed in any particular prison or in a prison with

---

be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). In both motions, Barber expressly asks the Court to order an immediate change to his current housing status, not merely to preserve the status quo pending resolution on the merits. The motions also contain new factual allegations that purport to state a retaliation claim against Wright and Doss that arose only after Barber filed his Complaint in September 2014. Thus, I find it more appropriate to construe Barber's filings as motions to supplement the Complaint under Rule 15(d) of the Federal Rules of Civil Procedure. *See Franks*, 313 F.3d at 198 n.15.

11

less restrictive conditions." *Williams v. Bass*, No. 7:07cv319, 2007 WL 2048667, at *1 (W.D. Va. July 11, 2007) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)). The Court still must consider whether the transfer was in retaliation for Barber's lawsuit.

In support of his allegations of retaliation, Barber claims that "when [he] was received at ROSP, he was threatened 'not to file legal paperwork,'" Second Mot. to Compel ¶ 3, but he does not say who threatened him or allege any facts tying that threat to the fact that he sued Wright and Doss six months earlier. The mere fact of a pending lawsuit does not establish that a prisoner's transfer was retaliatory. *See Hoye v. Clarke*, No. 7:14cv124, 2015 WL 3407609, at *11 (W.D. Va. May 27, 2014) ("The requisite causal connection requires a showing of more than mere temporal proximity between the exercise of a plaintiff's right and the alleged retaliatory action."). Barber also states that he "did nothing to deserve" the transfer to ROSP, Second Mot. to Compel ¶ 4, but he does not allege specific facts suggesting that his filing this lawsuit played any role in the RNCC officials' decision to transfer him there. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (noting that federal courts must regard prisoners' retaliation claims "with skepticism, lest [they] embroil themselves in every disciplinary act that occurs in state penal institutions"). Barber's "bare assertions of retaliation" do not state a claim against Wright and Doss that is plausible on its face. *Goodman v. Smith*, 58 F. App'x 36, 38 (4th Cir. 2003); *accord Iqbal*, 556 U.S. at 678. Thus, allowing Barber to supplement his Complaint with the proposed pleading would be futile. *Ohio Valley Envtl. Coal.*, 841 F. Supp. 2d at 979.

IV. Conclusion

The Defendants produced admissible evidence showing that there is no genuine dispute as to any material fact on the merits of Barber's deliberate-indifference claims and that they are entitled to judgment as a matter of law. Barber's responses generally restate his factual

12

allegations and legal conclusions, but they contain no evidence establishing specific material facts genuinely in dispute. Therefore, I respectfully recommend that the presiding District Judge **GRANT** the Defendants' motions for summary judgment, ECF Nos. 37, 46, 49. I also recommend that the presiding District Judge **DENY** Barber's motions, ECF Nos. 57, 58, as futile.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record and unrepresented parties.

ENTERED: June 11, 2015

*Joel C. Hoppe*

Joel C. Hoppe
United States Magistrate Judge